UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Greenlight Capital, Inc., <br><br> Plaintiff, <br><br> -vs.- <br><br> James Fishback, <br><br> Defendant. | No. _____24-2299_____ <br><br><br> **COMPLAINT** |

## COMPLAINT

Plaintiff, Greenlight Capital, Inc. ("Greenlight"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its complaint (the "Complaint") against Defendant James Fishback ("Defendant" or "Fishback") alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages from Defendant's failure to pay amounts due and owing under a promissory note executed by the Defendant in favor of Greenlight.

## PARTIES

2. Plaintiff, Greenlight Capital, Inc., is a corporation formed under the laws of the State of Delaware and registered to do business in New York.

3. Upon information and belief, Defendant is an individual and resident of the state of Florida, residing at 115 Southwest Pinckney Street, Madison, Florida 32340.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 in value, exclusive of interest and costs, and is between citizens of different states.

5. For purposes of diversity jurisdiction, Greenlight is a citizen of the states of Delaware and New York.

6. For purposes of diversity jurisdiction, Defendant is a citizen of the state of Florida.

7. This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4 and the New York state long-arm statute, CPLR § 302(a)(1), because the cause of action for breach of the promissory note arises from the Defendant's transaction of business within the State of New York. Specifically, the Defendant executed the promissory note at issue which listed his principal place of business as being in New York, and stated that the promissory note shall be governed by and construed in accordance with New York law.

8. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTUAL ALLEGATIONS**

**I.   Background**

9. Greenlight is Defendant's former employer. Beginning in February 2021 and during the course of his employment, Defendant was a Research Analyst with Greenlight. Defendant ceased being employed by Greenlight on August 15, 2023.

**II.   The Promissory Notes**

10. Defendant executed two promissory notes in favor of Greenlight that are relevant for purposes of this Complaint.

11.     On February 1, 2023, Defendant, as Borrower, executed a Second Amended and Restated Promissory Note and Security Agreement (the "First Note"), in the original principal amount of $222,346.12, in favor of Greenlight, as Lender. The First Note has a maturity date of February 1, 2024. A true and correct copy of the First Note is annexed as **Exhibit A** and incorporated herein.

12.     On July 12, 2023, Defendant, as Borrower, executed a Promissory Note and Security Agreement (the "Second Note," and together with the First Note, the "Notes"), in the original principal amount of $115,000.00, in favor of Greenlight, as Lender. The Second Note has a maturity date of October 12, 2023. A true and correct copy of the Second Note is annexed as **Exhibit B** and incorporated herein.

13.     Aside from the principal amounts, interest rates, and maturity dates, the other material terms of the Notes that are relevant for the purposes of this action are identical and are thus discussed together below.

14.     Section 1 of each of the Notes requires that, on the maturity date for each Note, the Defendant shall pay Greenlight "the outstanding principal amount of [the Note] plus any and all accrued and unpaid interest and all other amounts owing by the Borrower to the Lender" under the Notes. *See* Notes § 1. Section 2 of the Notes provides for the method of computing the payable interest, and states that:

> The entire unpaid principal of this Note outstanding shall bear interest during the period beginning on the date hereof and ending on the date on which the entire unpaid principal amount of this Note shall be paid in full in cash at an annual interest rate equal to the lowest rate that would not result in the loan represented by this Note being a "below market loan" as defined by Section 7872 of the Internal Revenue Code of 1986, as amended (the "Interest Rate"). Interest on the outstanding principal amount of this Note shall be due and payable on the Maturity Date. Interest hereunder shall be calculated on the basis of a 360-day year and the actual number of days elapsed.

*See* Notes § 2.

15. Section 3(b) of the Notes provides that if the Borrower ceases to be an employee of Greenlight Capital, Inc., the Borrower "shall be required to immediately prepay in full all amounts outstanding under the Note (including, without limitation, all principal interest and fees hereunder) . . . ." Notes § 3(b).

16. Pursuant to section 4(a) of the Notes, Defendant granted Greenlight "a continuing first priority security interest in all presently existing and hereafter acquired or arising Collateral (as defined [therein]) in order to secure the prompt payment of any and all obligations of the Borrower" under the Notes. Notes § 4(a).

17. Section 4(b) of the Notes broadly defines "Collateral" as including Borrower's right, title and interest in, to and under the following:

> (i) all partnership interests, shares, membership interests, equity interests or any other interests or rights in any entity managed by Greenlight Capital, Inc. or its affiliates;
>
> (ii) all compensation received or to be received by the Borrower from Greenlight Capital, Inc. or any of its affiliates during the period that any amounts remain outstanding under this Note; and
>
> (iii) all proceeds of the foregoing.

Notes § 4(b).

18. Pursuant to section 5(a) of the Notes, a "Default" occurs if, *inter alia*, the Defendant "fails to pay any installment of principal or interest on or before the due date thereof or shall fail to pay any other sums due hereunder when the same shall become due and payable, in each case whether at the stated date of maturity or any accelerated date of maturity or at any other date fixed for payment and such failure continues uncured for a period of five days[.]" Notes § 5(a).

19. Pursuant to section 5(d) of the Notes, a "Default" also occurs if "(i) the Borrower generally does not pay the Borrower's debts as they become due…." Notes § 5(d).

20. Upon the occurrence of a Default, the Lender may "declare all amounts owing with respect to this Note to be, and they shall thereupon forthwith become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower," and "exercise any and all other rights and remedies it may have under other agreements and under applicable law . . . ." *See* Notes § 5(i)-(ii).

21. Section 5 of the Notes also provides that "[u]pon a Default, Lender may apply payments received thereafter to principal and/or interest payable hereunder as Lender in its sole discretion shall determine." *See* Notes § 5.

22. Section 7 of the Notes provides that:

The Borrower hereby (a) agrees to pay all costs of collection, including without limitation, reasonable attorneys' fees, if the principal of or interest on this Note is not paid in full when the same shall become due and payable hereunder, (b) waives presentment for payment, protest and demand, notice of non-payment, notice of protest, demand, dishonor, non-payment, default, acceleration, intent to accelerate, diligence in collecting this Note and all other presentments, notices, demands and acts that otherwise might condition or restrict a right to immediate payment of this Note upon demand, (c) shall make all payments hereunder immediately when due without any set-off, counterclaim, defenses, withholding (for taxes or otherwise), or reduction of any kind, and (d) agrees that the Lender, at the Lender's sole option, may apply any amounts otherwise due to the Borrower by the Lender to the payment of this Note. This Note may not be amended or modified except by an instrument in writing signed by both the Borrower and Lender. This Note and the Borrower's rights and obligations hereunder may not be assigned by the Borrower without the Lender's prior written consent. The failure of Lender to exercise all or any of its rights, remedies, powers or privileges hereunder in any instance shall not constitute a waiver thereof in that or in any other instance. The Borrower hereby grant to the Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations of the Borrower to the Lender under this Note, whether now existing or hereafter arising, upon and against all of each Borrower's deposits, credits, securities, investment property, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Lender or in transit to it. At any time, without demand or notice (any such notice being expressly waived by the Borrower), the Lender may setoff the same or any part thereof and

apply the same to any liability or obligation of the Borrower under this Note even though unmatured and regardless of the adequacy of any other collateral securing the Loan.  ANY AND ALL RIGHTS TO REQUIRE THE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN PRIOR TO EXERCISING ITS RIGHT OR SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

Notes § 7.

23. Finally, section 9 of each of the Notes states that: "This Note shall be construed in accordance with and governed by the laws of the State of New York without regard to principles of conflict of laws."  Notes § 9.

### III. First Default and Forbearance Offer

24. At no point in time has Defendant ever made any payments pursuant to either of the Notes.

25. Defendant resigned as an employee of Greenlight on July 31, 2023 and ceased to be an employee of Greenlight on August 15, 2023.  As a result, he was immediately required to prepay in full all amounts outstanding under the Notes.  *See* Notes § 3(b).

26. Before Defendant ceased to be an employee of Greenlight, he requested that Greenlight forbear from collecting on the amounts due and owing under the Notes.

27. On August 16, 2023, Greenlight sent Defendant a Conditional Temporary Waiver of Repayment (the "Forbearance Letter") after being asked by Defendant for forbearance.  A true and correct copy of the Forbearance Letter is annexed as **Exhibit C** and incorporated herein.

28. In the Forbearance Letter, Greenlight offered to "temporarily and conditionally forebear from foreclosing on, and otherwise exercising its rights with respect to the non-payment on the Due Date of (the 'Forbearance') (a) the Second Note, until October 15, 2023, and (b) the

6

First Note, until February 1, 2024," subject to the conditions set forth in paragraphs 1 through 4 of the Forbearance Letter. Those paragraphs read:

> 1. <u>Interest</u>. Interest will continue to accrue on each Note at the current rate of interest until all amounts due under each Note are irrevocably repaid to Greenlight in full;
>
> 2. <u>Repayment of Second Note</u>. The proceeds of your redemption from DME Management GP, LLC on September 30, 2023 (the "Redemption") will be used to repay all amounts then outstanding under the Second Note (the "Second Note Amount"). To the extent there are any proceeds from the Redemption in excess of the Second Note Amount, all of such excess will be used to repay amounts outstanding under the First Note, applied first to unpaid and accrued interest, then to unpaid principal;
>
> 3. <u>Security Interest in GRBK SPV</u>. As provided in Section 4 of each Note, Greenlight has a continuing, first priority lien on your entire interest (either directly, or indirectly through your interest in DMEMGP) in Greenlight Domestic Holding, LLC, and all proceeds thereof, to secure repayment of all amounts due under the Notes; and
>
> 4. <u>Employment Agreement</u>. You will not breach any of the provisions of Sections 5 or 8 of your Employment Agreement with Greenlight dated February 8, 2021, nor will you represent yourself, publicly or privately, as anything other than a former Research Analyst at Greenlight Capital.

Forbearance Letter ¶¶ 1-4.

29. Immediately following paragraph 4, the Forbearance Letter provides that: "In the event that Greenlight determines at any time, in its sole and absolute discretion, that any of the conditions set forth in paragraphs 1 to 4 above are not satisfied, the Forbearance will immediately terminate, and the Notes, and all outstanding amounts thereunder, including, without limitation, all accrued and unpaid interest thereon, will become immediately due and payable without any further action or demand of Greenlight or Fishback, and Greenlight shall immediately be entitled to exercise any and all of its rights and remedies with respect to the Notes and the unpaid amounts thereunder, including, without limitation, foreclosing on the security interests granted pursuant to the Notes." *Id.* at 2.

7

30. Defendant stood to benefit from a forbearance, given that he had requested a forbearance, terminated his employment well in advance of the maturity dates under the Notes, and failed to make any payments pursuant to the Notes in the days and weeks following the termination of his employment.[1]

31. In a good-faith effort to provide Defendant with an opportunity to comply with his obligations, Greenlight did in fact temporarily and conditionally forbear from exercising its rights under the Notes in the weeks following Defendant's termination, consistent with the Forbearance Letter's terms.

32. Defendant, however, used this period to his benefit to effectively obtain forbearance from Greenlight without complying with paragraph 4 of the Forbearance Letter. Defendant did so to Greenlight's detriment.

33. On or about September 27, 2023, Greenlight learned that Defendant was not complying with paragraph 4 of the Forbearance Letter. Specifically, Greenlight received information suggesting that Defendant had falsely represented himself as having held certain titles during his employment with Greenlight other than "Research Analyst," including but not limited to "Head of Macro," and upon information and belief, falsely represented his role in Greenlight's investment performance. Greenlight became aware of these false representations through Defendant's efforts to market himself and a hedge fund that he had founded, Azoria Partners, to potential investors. Greenlight understood that Defendant was using the "Head of Macro" title to wrongfully appropriate Greenlight's track record and success in making investments informed by macroeconomic events (referred to as "macro" investing or trading). These representations were

---

[1] Defendant was in breach of the Notes on August 16, 2023 by failing to make immediate payments of the amounts due under the Notes. *See* Notes § 3(b). Defendant also failed to cure that breach within five days, resulting in a Default under section 5(a) of the Notes.

false because the purported "Head of Macro" title has never existed at Greenlight, and had not been given to Defendant.

34. Pursuant to the terms in the final paragraph of the Forbearance Letter, Greenlight's conditionally offered forbearance terminated immediately, and Greenlight committed itself to recovering all outstanding amounts under the Notes, which had already been due and payable without any further action or demand of Greenlight since August 16, 2023 under the terms of the Notes.

## IV. Demand Letters

35. On October 11, 2023, Greenlight sent Defendant a letter (the "First Demand Letter") that, *inter alia*, notified Defendant that Greenlight's conditional offer of forbearance had terminated and therefore his extant and uncured failure to make payments under the Notes constituted a Default. As such, Greenlight demanded that Defendant pay all outstanding amounts due under the Notes. A true and correct copy of the First Demand Letter is annexed as **Exhibit D** and incorporated herein. The First Demand Letter stated that as of the date of that letter, the amount due under the First Note was $229,303.33 and the amount due under the Second Note was $116,395.32, for a total amount due of $345,698.65.[2] *See id.* at 3. The First Demand Letter demanded immediate payment of these amounts, plus any additional accrued interest between the date of the letter and any subsequent payment. *See id.* at 3-4.

36. Greenlight also communicated in the First Demand Letter that absent full payment of all amounts due, Greenlight would pursue all remedies to which it was entitled at equity and law, including, but not limited to, compensatory damages, additional interest at the rate allowed

---

[2] These figures include the principal balance and interest accrued as of the date of the First Demand Letter. Note that, irrespective of whether Defendant accepted the forbearance, interest would continue to accrue in the same manner in any event under the Notes; thus, the calculation of these interest figures did not depend on whether Defendant accepted the offered forbearance.

9

by the Notes, prejudgment and post judgment interest, as well as Greenlight's attorneys' fees and costs. *See id.* at 4.

37. Greenlight further communicated in the First Demand Letter that it intended to pursue all remedies related to its liens, security interests, and rights of setoff in order to obtain payment of all amounts due under the Notes pursuant to sections 4 and 7 of the Notes. *See id.* at 4-5. Specifically, Greenlight notified Defendant that it intended to use the proceeds from the redemption of Defendant's interests in DME Management GP, LLC held by Greenlight on September 30, 2023 (the "Redemption") to repay amounts due under the Notes. *See id.* Those interests and their proceeds constituted collateral under section 4 of the Notes. *See* Notes § 4.

38. The First Demand Letter also made two other demands. First, it demanded that Defendant cease holding himself out as having held any title other than the title he actually held at Greenlight, which was "Research Analyst." Greenlight communicated that Defendant's representations to the contrary were not only false, but violated paragraph 4 of the Forbearance Letter. *See id.* at 1-2. Second, the First Demand Letter demanded that Defendant return (or destroy, as applicable), Greenlight's Confidential Information (as defined therein) in his possession or control. *See id.* at 5. This specific demand was prompted by the fact that Defendant was not only publicly promoting his new business venture, but as discussed in the letter, had wrongfully taken Greenlight's Confidential Information, namely Greenlight's portfolio of investments, by sending it from his Greenlight email address to his personal address on the last day of his employment with Greenlight. *See id.*

39. Greenlight sent the First Demand Letter via overnight courier with proof of delivery to 115 Southwest Pinckney Street, Madison, Florida 32340, which was the last address furnished by Defendant to Greenlight. Greenlight also sent the letter via email to the email address that

10

Defendant had most recently used to communicate with Greenlight, *tommyfishback@gmail.com*, as well as the email address that was posted on the website and LinkedIn account for Defendant's new business venture, Azoria Partners, *james@azoriapartners.com*. A true and correct copy of an email from Mr. Stephen Baldini transmitting the First Demand Letter to these email addresses is annexed as **Exhibit E** and incorporated herein.

40. Defendant failed to respond or make any payments pursuant to the Notes after Greenlight sent the First Demand Letter.

41. On October 19, 2023, Greenlight sent Defendant a second letter (the "Second Demand Letter") reiterating the demands made in the First Demand Letter, and documenting certain of Defendant's efforts which showed that he had received the First Demand Letter, but was trying to obfuscate that fact in an attempt to deny that he had received notice. A true and correct copy of the Second Demand Letter is annexed as **Exhibit F** and incorporated herein. Specifically, the Second Demand Letter noted that within twenty-four hours of sending the First Demand Letter, the contact email address that was posted on the website and LinkedIn account for Azoria Partners had been changed from *james@azoriapartners.com* to *sunset@azoriapartners.com*. *See id.* at 2. The First Demand Letter was included as an enclosure to the Second Demand Letter.

42. Greenlight sent the Second Demand Letter via the same means as the First Demand Letter. Furthermore, as discussed in the Second Demand Letter, Greenlight sent the Second Demand Letter to the email address that had been substituted onto the Azoria Partners LinkedIn account and website, *sunset@azoriapartners.com*. *See id.*

43. A true and correct copy of an email from Mr. Stephen Baldini transmitting the Second Demand Letter to these email addresses is annexed as **Exhibit G** and incorporated herein.

44.     Defendant has never responded to any of Greenlight's demand letters or made any payments pursuant to the Notes.

45.     Furthermore, the maturity date of the Second Note was October 12, 2023. Defendant failed to make the required payment due on that date, and failed to cure that non-payment within a period of five days, resulting in a "Default" under section 5(a) of the Second Note.

### V.    Redemption & Remaining First Note Balance

46.     As discussed *supra*, Greenlight notified Defendant in the First Demand Letter that it intended to use the proceeds from certain of Defendant's interests held by Greenlight (which constituted "Collateral" under section 4 of the Notes) to pay amounts due and owing under the Notes. Consistent with that notification, on October 31, 2023, Greenlight applied the entire $131,383.02 balance of proceeds from the Redemption of Defendant's interests in DME Management GP, LLC held by Greenlight to repay amounts due under the Second Note (in full) and the First Note (in part).

47.     Specifically, as of October 31, 2023, the amount due and owing under the Second Note was $116,702.00, comprised of the principal ($115,000.00) and accrued interest ($1,702.00). Greenlight paid these amounts in full with a portion of the proceeds held by Greenlight from the Redemption.

48.     As of October 31, 2023, the amount due and owing under the First Note was $229,855.49, comprised of the principal ($222,346.12) and accrued interest ($7,509.37).

49.     Greenlight used the remaining $14,681.02 balance of the proceeds from the Redemption to make payments in partial satisfaction of the First Note. Specifically, Greenlight used the remaining balance of the proceeds from the Redemption to first pay the accrued interest

in full ($7,509.37), and used the remaining amount of the Redemption proceeds ($7,171.65) to make a payment in partial satisfaction of the principal amount under the First Note.

50. After the payment against the principal above on October 31, 2023, there was a remaining principal balance of $215,174.47 under the First Note. Pursuant to section 2 of the First Note, interest has continued to accrue thereafter on that principal balance at a rate of $26.72 per day, or $9,618.30 per year.

## VI.  Defendant's Failure to Pay & Communications with Greenlight

51. To date, Defendant has failed to make any payments pursuant to either of the Notes, respond to Greenlight's demand letters, or even express an intent to make any payments pursuant to the Notes.

52. On October 27, 2023, Defendant contacted Ms. Jennifer Goff, Greenlight's Director of Investor Services, via email and requested his "balances," presumably in any assets held by Greenlight, as of September 30. At that point in time, Defendant had already received the First and Second Demand Letters from Greenlight, which directed him to respond via counsel, but he failed to respond. Additionally, by that point in time, Defendant, represented by counsel, had filed a complaint in New York State Supreme Court against Greenlight on unrelated causes of action.[3]

53. Given this status, Mr. Barrett C. Brown, Greenlight's Chief Financial Officer, responded to Defendant on October 27, 2023, instructing him to direct any communications intended for Greenlight through undersigned counsel.

---

[3] In his complaint, Defendant alleged that Greenlight told an unidentified potential investor in his new firm, Azoria Partners, that he was "not Head of Macro" at Greenlight. *See Fishback v. Greenlight Capital, Inc.*, Index No. 160289/2023, (N.Y. Sup. Ct., N.Y. County), NYSCEF # 2 at ¶ 30. His complaint consisted of two counts for defamation based on this single alleged statement. *See id.* ¶¶ 33-54. On January 24, 2024, Greenlight and Defendant entered into a stipulation whereby Defendant voluntarily discontinued the defamation action in New York State Supreme Court, and agreed to submit the defamation claims to arbitration. *See Fishback v. Greenlight Capital, Inc.*, Index No. 160289/2023, (N.Y. Sup. Ct., N.Y. County), NYSCEF # 22.

54. Neither Defendant nor any attorney representing Defendant contacted counsel for Greenlight about this matter following this communication. Nevertheless, a few months later, on January 19, 2024, Defendant again contacted a different Greenlight employee, Mr. Jason Lewis, to "request a full redemption of all of [his] personal and retirement assets in Greenlight Capital by COB today." Greenlight's Chief Operating Officer, Mr. Daniel Roitman, responded to Defendant's email the same day, and informed Defendant that he had no redeemable interests held by Greenlight. And again, Mr. Roitman directed Defendant to direct all communications to Greenlight through counsel.

55. For the avoidance of doubt, later that same day, Greenlight sent a copy of statements summarizing the nature of Defendant's interests held by Greenlight, as well as the amounts due and owing under the Notes, via counsel to the attorney representing Defendant in the New York State Supreme Court action.

56. On February 1, 2024, the First Note also reached maturity. Defendant failed to make the required payment due on that date, and failed to cure that non-payment within a period of five days, resulting in yet another "Default" under the First Note pursuant to section 5(a).

57. To date, Greenlight has yet to actually receive any communications (via counsel or otherwise) with respect to this matter, or any other communication from Defendant suggesting that he intends to make any payments due and owing under the Notes.

## FIRST CAUSE OF ACTION

**(Breach of the First Note)**

58. Greenlight incorporates by reference as if fully set forth herein its averments and allegations set forth in Paragraphs 1 through 57 of its Complaint.

59. The First Note is a valid and enforceable agreement executed by Defendant in favor of Greenlight.

60. Under the terms of the First Note, any outstanding balance owing on the First Note was immediately due and payable no later than August 16, 2023. To the extent that the Forbearance Letter constituted an offer by Greenlight to Defendant, that offer terminated no later than September 27, 2023, when Defendant breached the conditions for the offered forbearance.

61. Greenlight has fully performed under the First Note and, as applicable, the Forbearance Letter.

62. Defendant has committed at least two Defaults under the First Note: (i) First, the Defendant breached the First Note by failing to repay all amounts due and owing under the First Note by August 16, 2023; that breach ripened into a Default when Defendant failed to cure that non-payment within five days; and (ii) Second, the Defendant failed to pay the amounts due under the First Note on its maturity date of February 1, 2024; that breach ripened into a Default when Defendant failed to cure that non-payment within five days.

63. As of today, Greenlight has not received a single payment from Defendant owing under the First Note, despite multiple demands for payment following the first breach and Default above.

64. As of October 31, 2023, and following the application of the proceeds from the Redemption in partial satisfaction of the First Note, there was a remaining unpaid principal balance of $215,174.47 under the First Note. Greenlight is entitled to the recovery of that principal balance, as well as interest which has continued to accrue at the rate of $26.72 per day from October 31, 2023, pursuant to section 2 of the First Note. The total amount of principal and interest due and owing under the First Note as of the date of this Complaint is $219,128.66. Greenlight is also entitled to attorneys' fees and costs, expenses, and other amounts due and owing pursuant to the First Note and applicable law, including prejudgment interest, which continue to accrue.

65. The repayment of the First Note has not been postponed or otherwise excused by Greenlight.

66. Defendant's failure to repay the First Note has directly and proximately caused damages to Greenlight, including but not limited to the loss of the outstanding principal under the First Note and the interest due thereto, as well as the attorneys' fees and costs, expenses, and other amounts due and owing that continue to accrue.

67. All conditions precedent necessary to bring forth the claim(s) set forth herein have been satisfied.

## **PRAYER FOR RELIEF**

Wherefore, Greenlight respectfully requests judgment as follows:

(a) That judgment be entered against Defendant in favor of Greenlight in the amount of not less than $219,128.66, plus interest from the date of this Complaint through the date of judgment at the interest rate specified under the First Note;

(b) That judgment be entered awarding Greenlight its reasonable attorneys' fees and costs incurred by reason of Defendant's breach of and default under the First Note, as allowable under applicable law;

(c) That judgment be entered awarding Greenlight pre-judgment and post-judgment interest; and

(d) That Greenlight be awarded such other and further relief as shall be just and equitable.

New York, New York
Dated: March 27, 2024

                                              AKIN GUMP STRAUSS HAUER & FELD LLP

                                              By:    */s/ Stephen M. Baldini*
                                                        Stephen M. Baldini
                                                        Akin Gump Strauss Hauer & Feld LLP
                                                        One Bryant Park
                                                        New York, NY 10036
                                                        Tel: 212-872-1000
                                                        Fax: 212-872-1002
                                                        sbaldini@akingump.com

                                                        *Counsel for Plaintiff Greenlight Capital, Inc.*