UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREENLIGHT CAPITAL, INC.,

                Plaintiff,

    v.

JAMES FISHBACK,

                Defendant.

1:24-CV-02299-LTS

---

MEMORANDUM ORDER

In this action, Plaintiff Greenlight Capital, Inc. ("Plaintiff" or "Greenlight") brings a one-count action against Defendant James Fishback ("Defendant" or "Fishback") alleging breach of contract. (Docket entry no. 1 ("Compl.") ¶¶ 58-67.) The Court has subject matter jurisdiction of this action under 28 U.S.C. section 1332(a).

This Memorandum Order addresses the Plaintiff's motion for summary judgment. (Docket entry no. 13.) The Court has considered carefully the parties' submissions—(docket entry no. 14 ("Pl. Mem."); docket entry no. 19 ("Def. Mem."); docket entry no. 20 ("Pl. Reply"))[1]—and, for the reasons set forth below, Plaintiff's motion for summary judgment is granted in full.

BACKGROUND

The following background is, unless otherwise noted, drawn from the undisputed facts in the pleadings and documentary exhibits submitted by the parties. (Docket entry no. 16

---

[1] Docket entry pincites are to ECF-designated pages.

("Pl. 56.1 St."); docket entry no. 17 ("Def. 56.1 St.")[2].) Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and affidavits cited therein. See LOCAL RULE 56.1(d).

The First Note

On February 1, 2023, Defendant, as "Borrower," executed a Second Amended and Restated Promissory Note and Security Agreement (the "First Note"), in the original principal amount of $222,346.12, in favor of Plaintiff, as "Lender." (Pl. 56.1 St. ¶ 1; see also docket entry no. 15-1 ("First Note").) The First Note has a "Maturity Date" of February 1, 2024. (Pl. 56.1 St. ¶ 1.)

The Second Note

On July 12, 2023, Defendant, as "Borrower," executed a Promissory Note and Security Agreement (the "Second Note," and together with the First Note, the "Notes"), in the original principal amount of $115,000.00, in favor of Plaintiff, as "Lender." (Pl. 56.1 St. ¶ 2; see also docket entry no. 15-2 ("Second Note").) The Second Note has a "Maturity Date" of October 12, 2023. (Pl. 56.1 St. ¶ 2.)

The Terms of the Notes

Aside from the principal amounts, interest rates, and maturity dates, the material terms of the Notes that are relevant to this motion practice are identical. (Pl. 56.1 St. ¶ 4.)

Section 1 of the Notes provides:

On the Maturity Date, there shall become absolutely due and payable by the Borrower hereunder, and the Borrower hereby promises to pay to the Lender, a payment in an amount equal to the outstanding principal amount of this Note plus any and all accrued and unpaid interest and all other amounts owing by the Borrower to the Lender hereunder without

---

[2]    Merely repeating allegations in Defendant's Answer, Defendant's 56.1 Statement cites no evidence whatsoever.

presentment, further demand, protest, notice of protest or any other formalities of any kind, all of which are hereby expressly and irrevocably waived by the Borrower.

(First Note § 1.)

Section 2 of the Notes details the computation of interest: "The entire unpaid principal of this Note outstanding shall bear interest during the period beginning on the date hereof and ending on the date on which the entire unpaid principal amount of this Note shall be paid in full in cash at an annual interest rate equal to [method of calculation] (the 'Interest Rate')." (Pl. 56.1 St. ¶ 6 (quoting First Note § 2).) "Interest on the outstanding principal amount of this Note shall be due and payable on the Maturity Date." (Id. ¶ 6 (quoting First Note § 2).) The rate of interest is $26.72 per day, or $9,618.30 per year. (Id. ¶ 39 (citing First Note § 2).)

Section 3(b) of the Notes provides that, "immediately upon the Borrower [Defendant] ceasing to be an employee of Greenlight Capital, Inc. [Plaintiff] for any reason (whether voluntary or involuntary), the Borrower shall be required to immediately prepay in full all amounts outstanding under the Note (including, without limitation, all principal interest and fees hereunder)[.]" (Id. ¶ 7 (quoting First Note § 3(b)).)

Under Section 4(a) of the Notes, Defendant granted Plaintiff "a continuing first priority security interest in all presently existing and hereafter acquired or arising Collateral (as defined [therein]) in order to secure the prompt payment of any and all obligations of the Borrower" under the Notes. (Id. ¶ 8 (quoting First Note § 4(a)).) Section 4(b) of the Notes defines "Collateral" as "all of the [Defendant's] right, title and interest in, to and under the following: (i) all partnership interests, shares, membership interests, equity interests or any other interests or rights in any entity managed by Greenlight Capital, Inc. or its affiliates; (ii) all compensation received or to be received by the Borrower from Greenlight Capital, Inc. or any of

its affiliates during the period that any amounts remain outstanding under this Note; and (iii) all proceeds of the foregoing." (Id. ¶ 9 (quoting First Note § 4(b)).)

Under Section 5(a) of the Notes, a "Default" occurs if, inter alia, the Defendant "fails to pay any installment of principal or interest on or before the due date thereof or shall fail to pay any other sums due hereunder when the same shall become due and payable, in each case whether at the stated date of maturity or any accelerated date of maturity or at any other date fixed for payment and such failure continues uncured for a period of five days[.]" (Id. ¶ 10 (quoting First Note § 5(a)).) Under Section 5 of the Notes, "[i]n the event" of a "Default," the Lender may "declare all amounts owing with respect to this Note to be, and they shall thereupon forthwith become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower," and "exercise any and all other rights and remedies it may have under other agreements and under applicable law[.]" (Id. ¶ 12 (quoting First Note § 5(i)-(ii)).) Section 5 of the Notes further provides that, "[u]pon a Default, Lender may apply payments received thereafter to principal and/or interest payable hereunder as Lender in its sole discretion shall determine." (Id. ¶ 13 (quoting First Note § 5).)

Section 7 of the Notes provides that "[t]his Note may not be amended or modified except by an instrument in writing signed by both the Borrower and Lender." (Id. ¶ 14 (quoting First Note § 7).) Section 7 also gives Plaintiff certain setoff rights:

> The Borrower hereby . . . agrees that the Lender, at the Lender's sole option, may apply any amounts otherwise due to the Borrower by the Lender to the payment of this Note . . . . The Borrower hereby grant to the Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations of the Borrower to the Lender under this Note . . . . At any time, without demand or notice (any such notice being expressly waived by the Borrower), the Lender may setoff the same or any part thereof and apply the same to any liability or obligation of the

>Borrower under this Note even though unmatured and regardless of the adequacy of any other collateral securing the Loan.

(First Note § 7.)

Section 9 of the Notes provides that each "Note shall be construed in accordance with and governed by the laws of the State of New York without regard to principles of conflict of laws." (Pl. 56.1 St. ¶ 15 (quoting First Note § 9).)

Defendant's Resignation and the Forbearance Discussions

On July 31, 2023, Defendant voluntarily terminated his employment by resigning from Greenlight, effective August 15, 2023. (Id. ¶ 16.)

On August 7, 2023, prior to the effective date of his resignation, Defendant requested that Plaintiff forbear from collecting on the amounts due and owing under the Notes. (Id. ¶ 21.) In response, on August 16, 2023, Plaintiff sent Defendant a Conditional Temporary Waiver of Repayment (the "Forbearance Letter"). (Id. ¶ 22.) In the Forbearance Letter, Plaintiff offered to "temporarily and conditionally forbear from foreclosing on, and otherwise exercising its rights with respect to the non-payment on the Due Date of (the 'Forbearance') (a) the Second Note, until October 15, 2023, and (b) the First Note, until February 1, 2024," subject to certain conditions set forth in paragraphs 1 through 4 of the Forbearance Letter. (Id. ¶ 23 (quoting docket entry no. 15-3 at 2 ("Forbearance Ltr.")).) One of those conditions—set forth in paragraph 4—was that Defendant would not "represent [him]self, publicly or privately, as anything other than a former Research Analyst at Greenlight Capital." (Id. ¶ 23 (quoting Forbearance Ltr. ¶ 4).) Another condition—set forth in paragraph 1—was that "[i]nterest will continue to accrue on each Note at the current rate of interest until all amounts due under each Note are irrevocably repaid to Greenlight in full." (Forbearance Ltr. ¶ 1.)

The Forbearance Letter further sets forth penalties for violating those conditions:

> In the event that Greenlight determines at any time, in its sole and absolute discretion, that any of the conditions set forth in paragraphs 1 to 4 above are not satisfied, the Forbearance will immediately terminate, and the Notes, and all outstanding amounts thereunder, including, without limitation, all accrued and unpaid interest thereon, will become immediately due and payable without any further action or demand of Greenlight or Fishback, and Greenlight shall immediately be entitled to exercise any and all of its rights and remedies with respect to the Notes and the unpaid amounts thereunder, including, without limitation, foreclosing on the security interests granted pursuant to the Notes.

(Pl. 56.1 St. ¶ 24 (quoting Forbearance Ltr. at 3).)

Defendant never responded to the Forbearance Letter. (Id. ¶ 25.) The parties never entered into any written agreement modifying the Notes.[3] (Id. ¶ 26.)

---

[3] In his Answer to Plaintiff's Complaint, Defendant alleged, as an affirmative defense, that on August 7, 2023, he spoke with Daniel Roitman, the Chief Operating Officer of Greenlight. (Docket entry no. 8 ("Answer") at 10.) According to Defendant, during that conversation, "Mr. Roitman offered forbearance from collections on either the First Note or the Second Note, until at least February 1, 2024, which was the original Maturity Date of the Second Note," and that he "accepted that offer and agreed to such forbearance." (Id.) Defendant further alleges that unlike the written Forbearance Letter, this oral agreement "did not include any conditions for forbearance." (Id.) Defendant repeated this same allegation in his Rule 56.1 Statement. (Def. 56.1 St. ¶ 17.)

Defendant, however, proffers no evidence to support these allegations. Defendant cannot rely on allegations in his Answer to defeat summary judgment. See Gottlieb v. Cty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (A party opposing summary judgment "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements."); Belpasso v. Port Authority of N.Y. and N.J., 400 Fed. App'x 600, 601 (2d Cir. 2010) ("A [ ] plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor."). Defendant also did not proffer any evidence to support the repeated allegation in his Rule 56.1 Statement, which cites nothing whatsoever—not even an affidavit or declaration—in support of the alleged oral forbearance agreement. (Def. 56.1 St. ¶ 17); see Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (To defeat summary judgment, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998))).

On August 16, 2023, upon his resignation, Defendant failed to make any payment pursuant to either of the Notes. (Id. ¶ 18.) Defendant also failed to make any payment within 5 days of his resignation. (Id. ¶ 20.) Indeed, to date, Defendant has not made any payment. (Id. ¶ 43.)

The First Demand Letter

On October 11, 2023, Plaintiff sent Defendant the "First Demand Letter." (Id. ¶¶ 28-29.) The letter stated:

> Because your employment with Greenlight terminated on August 15, 2023, each of the Notes, and all amounts outstanding thereunder, became due and payable on August 16, 2023 (the "Due Date") pursuant to the terms of Section 3(b) of each of the Notes. Notwithstanding the foregoing, Greenlight temporarily and conditionally forbore from foreclosing on, and otherwise exercising its rights with respect to, the non-payment in connection with the Forbearance Letter. Greenlight's forbearance was subject to the conditions set forth in paragraphs 1 to 4 of the Forbearance Letter.

(Docket entry no. 15-4 at 4.)

The First Demand Letter accused Defendant of breaching paragraph 4 of the Forbearance Letter "at least as early as September 27, 2023" by "falsely represent[ing] [him]self as having held certain titles during your employment with Greenlight other than 'Research Analyst,' including but not limited to 'Head of Macro.'" (Id. at 4.)

According to the letter, Defendant had committed a "Default" under the Notes. (Id. at 3-4.) As such, the letter "demand[ed] [ ] the unpaid amount of $345,698.65 plus any additionally accrued but unpaid interest on the Notes[.]" (Id. at 5.)

The letter further stated that Plaintiff "intend[ed] to use the proceeds from your [Defendant's] redemption from DME Management GP, LLC on September 30, 2023." (Id. at 5-6.) The letter explained that Plaintiff was taking the action pursuant to Section 4 of the Notes,

which gave Plaintiff a security interest in certain collateral in order to secure repayment, and Section 7, which gave Plaintiff certain setoff rights. (Id. at 6.)

The Second Demand Letter

On October 19, 2023, after Plaintiff failed to respond to the First Demand Letter, Plaintiff sent Defendant a second letter (the "Second Demand Letter") reiterating the demands made in the First Demand Letter. (Pl. 56.1 St. ¶¶ 31, 33.) Plaintiff again failed to respond. (Id. ¶ 33.)

The Redemption

On September 30, 2023, Plaintiff redeemed Defendant's interests in DME Management GP, LLC for $131,383.02. (Id. ¶¶ 34-35.) On October 31, 2023, Plaintiff applied the entire balance of proceeds from the redemption to repay amounts due and owing under the Second Note (in full) and the First Note (in part).[4] (Id. ¶ 35.) After the partial satisfaction of the First Note, there was a remaining principal balance of $215,174.47.[5] (Id. ¶ 39.) Pursuant to Section 2 of the First Note, interest has continued to accrue thereafter on that principal balance at a rate of $26.72 per day, or $9,618.30 per year.[6] (Id.)

---

[4] Specifically, as of October 31, 2023, the amount due and owing under the Second Note was $116,702.00, comprised of the principal ($115,000.00) and accrued interest ($1,702.00); and the amount due and owing under the First Note was $229,855.49, comprised of the principal ($222,346.12) and accrued interest ($7,509.37). (Pl. 56.1 St. ¶¶ 36, 37.) Of the $131,383.02 in total proceeds from the redemption, $116,702.00 was used to satisfy the Second Note in full; and $14,681.02 was used to satisfy the First Note in part ($7,509.37 for the accrued interest, and $7,171.65 toward the principal). (Id. ¶ 38.)

[5] Defendant does not challenge the remaining amount of principal. (Def. 56.1 St. ¶ 39.)

[6] Defendant does not challenge the computation of interest. (Def. 56.1 St. ¶ 39.)

Subsequent Events

On February 1, 2024, Defendant failed to pay in full all amounts outstanding under the First Note, and Defendant failed to cure that non-payment within a period of five days. (Id. ¶ 42.) To date, Defendant has not paid any amounts due and owing under the First Note, including the principal and interest due. (Id. ¶ 43.)

On March 27, 2024, Plaintiff brought this action against Defendant, alleging breach of the First Note and seeking payment of all amounts outstanding under the First Note. (Compl. ¶¶ 58-67.) On October 25, 2024, the parties updated the Court that discovery had concluded. (Docket entry no. 27.)

## Discussion

Plaintiff brings this motion for summary judgment under Federal Rule of Civil Procedure 56(a). Plaintiff has met its burden by proffering sufficient evidence to show that Defendant breached his undisputed obligations under the First Note by failing to pay the outstanding principal and accrued interest. Defendant offers no factual evidence or legal arguments in opposition. Accordingly, Plaintiff is entitled as a matter of law to summary judgment.

Standard of Review

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Because Defendant has failed to respond to the substantive merits of Plaintiff's motion,[7] the Court treats Plaintiff's motion as an unopposed motion for summary judgment. Although Defendant has chosen "the perilous path of failing to submit a response" to the Plaintiff's motion, the Court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). "[T]he district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed. . . . And, of course, the court must determine whether the legal theory of the motion is sound." Jackson v. Fed. Exp., 766 F.3d 189, 194 (2d Cir. 2014).

Breach of Contract

Under New York law,[8] to establish a breach of contract, Plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff,

---

[7] Merely repeating allegations in Defendant's Answer, Defendant's 56.1 Statement cites no evidence whatsoever. Similarly, Defendant's brief in opposition to plaintiff's motion for summary judgment set forth no substantive factual recitations and made no substantive legal arguments. (See generally docket entry no. 19 ("Def. Mem.").) Defendant's only argument was that "Plaintiff's Motion Should be Denied Because Substantial Discovery Remains Outstanding." (Id. at 2.) That argument is now moot, as discovery has concluded. (See docket entry no. 27 (October 25, 2024 joint status letter following the close of discovery).) Defendant has also waived his right to correct these deficiencies: in a status conference following the close of discovery, Defendant's counsel stated that he did not "intend or wish to supplement the submissions that have been regard to summary judgment." (Docket entry no. 28 (October 30, 2024 status conference transcript) at 4.)

[8] New York law applies because of the New York choice of law provision in Section 9 of the Notes. (Pl. 56.1 St. ¶ 15 (citing First Note § 9).)

(3) breach of contract by the defendant, and (4) damages." DBT GmbH v. J.L. Mining Co., 544 F. Supp. 2d 364, 375 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 177 (2d Cir. 2004)). "The meaning of contract provisions is a question of law." Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 (2d Cir. 2003) (citation omitted). Summary judgment "as a matter of law is appropriate if the contract language is unambiguous." Id. "Contract language is unambiguous when it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Id. (citation omitted). Unambiguous contract language is not rendered ambiguous by competing interpretations thereof urged in litigation. Id.

Plaintiff has shown that Defendant breached the terms of the First Note by failing to pay the outstanding balance by the "Maturity Date" (February 1, 2024) and by failing to cure that breach within 5 days. This breach constituted a "Default," which entitles Plaintiff to the remaining principal and accrued interest on the First Note.

Defendant Defaulted

Defendant defaulted under the First Note by failing to pay the outstanding balance by the "Maturity Date" (February 1, 2024). Under the terms of the First Note, "[o]n the Maturity Date," "there shall become absolutely due and payable by the Borrower hereunder . . . a payment in an amount equal to the outstanding principal amount of this Note plus any and all accrued and unpaid interest and all other amounts owing by the Borrower to the Lender hereunder." (First Note § 1.) To date, Defendant has not paid the outstanding balance on the First Note. This was an event of "Default." (Id. § 5(a) (defining a "Default" to include, inter alia, "Borrower fails to pay any installment of principal or interest on or before the due date thereof . . . and such failure

continues uncured for a period of five days").)  "In the event" of a "Default," Plaintiff is entitled to "declare all amounts owing with respect to this Note to be, and they shall thereupon forthwith become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower[.]"  (Id. § 5(i).)  Defendant is entitled to both the remaining principal ($215,174.47) and the accrued interest ($26.72 per day) since the October 31, 2023 redemption.  (See id. § 2 ("Interest on the outstanding principal amount of this Note shall be due and payable on the Maturity Date.").)

### Other Arguments Need Not Be Considered

Plaintiff is plainly entitled to payment of both the principal and the accrued interest on the First Note because of Defendant's "Default," which was caused by Defendant's uncured failure to pay the First Note on the "Maturity Date" of February 1, 2024.  The Court need not consider the effect of Defendant's resignation or the forbearance discussions because, regardless of these intervening events, Sections 1, 2, and 5—which form the basis of Plaintiff's claim, as described above—were not affected or modified.  Defendant was always required to repay the First Note by the "Maturity Date," February 1, 2024, which Defendant failed to do.

Defendant's Answer to Plaintiff's Complaint conclusorily alludes to various affirmative defenses—including estoppel, unclean hands, the first breach doctrine, waiver, unjust

enrichment, and an oral forbearance agreement[9]—but Defendant proffers no evidence or legal arguments in support thereof.  These conclusory allegations are insufficient to defeat summary judgment.  See Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (To defeat summary judgment, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998))).  All of these defenses are also irrelevant because Defendant has admitted that "[i]n all events, under the written terms of the First Note, Plaintiff was entitled to collect on the First Note at the latest on February 1, 2024."  (Def. 56.1 St. ¶ 41.)

## Conclusion

For the reasons explained above, Plaintiff's motion for summary judgment is granted in full.  Plaintiff is hereby awarded the outstanding balance on the First Note, including the remaining principal ($215,174.47) and the interest accrued thereon (at $26.72 per day) from November 1, 2023 (the day after the October 31, 2023 redemption) through the date of entry of judgment.  Plaintiff is also awarded post-judgment interest, which shall accrue at the rate

---

[9]   In a June 18, 2024 joint status letter, Defendant fleshed these theories out a little further, alleging "Plaintiff's unclean hands and bad faith in (a) framing its loans to Mr. Fishback as an 'advance' against Greenlight's January 2023 promise of an approximately $360,000 bonus to be paid to Mr. Fishback in or around January 2024 (i.e., just prior to the end of the agreed forbearance period), and affirming to Mr. Fishback that his August 2023 resignation would not void his bonus, but then failing to pay any portion of the bonus; and (b) seeking to weaponize a loan forbearance agreement as leverage to try to mislead the public and the market about Mr. Fishback's true role at Greenlight and, when Mr. Fishback did not capitulate to that gambit, improperly attempting to unilaterally amend or withdraw the loan forbearance agreement as a pressure tactic."  (Docket entry no. 10 at 2.)  But Defendant proffered no evidence to support these allegations and did not develop this argument in his opposition brief.

statutorily prescribed by 28 U.S.C. § 1961.  This Memorandum Order resolves docket entry no. 13.  The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff accordingly.  Any motion for attorneys' fees may be made pursuant to Federal Rule of Civil Procedure 54(d)(2) and shall set forth the basis for attorneys' fees, whether under the Notes or otherwise.

SO ORDERED.

Dated: New York, New York
       March 31, 2025

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge