**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Greenlight Capital, Inc.,

                              Plaintiff,

         -vs.-

James Fishback,

                              Defendant.

Case No. 1:24-cv-02299-LTS

**PLAINTIFF GREENLIGHT CAPITAL, INC.'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**

AKIN GUMP STRAUSS HAUER & FELD LLP

Stephen M. Baldini
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: 212-872-1000
Fax: 212-872-1002
sbaldini@akingump.com

*Counsel for Plaintiff Greenlight Capital, Inc.*

# **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................1

    A.      Akin's Hourly Rates are Reasonable ....................................................1

    B.      Akin's Hours are Reasonable................................................................4

    C.      Block-Billing Does Not Warrant Reductions.......................................6

    D.      Akin's Team Size Does Not Warrant Reductions .................................8

    E.      The Amount in Controversy Does Not Warrant Reductions..................9

    F.      Plaintiff is Entitled to Fees Related to this Motion..............................9

    G.      Plaintiff Does Not Seek Reimbursement for Administrative Tasks......11

    H.      Plaintiff's Costs are Compensable ......................................................11

CONCLUSION................................................................................................................12

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdell v. City of New York*,
    2015 WL 898974 (S.D.N.Y. Mar. 2, 2015) ...................................................................7

*An v. Despins*,
    2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024) ...........................................................2

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    369 F.3d 91 (2d Cir. 2004)....................................................................................11

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008)....................................................................................1

*ATX Debt Fund 1, LLC v. Paul*,
    2024 WL 2093387 (S.D.N.Y. May 9, 2024) ...........................................................3

*Billybey Marina Servs., LLC v. Bouchard Transp. Co.*,
    2021 WL 4950835 (S.D.N.Y. Oct. 25, 2021) .........................................................10

*Charles v. City of New York*,
    2014 WL 4384155 (S.D.N.Y. Sept. 4, 2014)...........................................................7

*Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona*,
    2021 WL 1222159 (S.D.N.Y. Mar. 31, 2021) .........................................................7

*Diamond D Enters. USA, Inc. v. Steinsvaag*
    979 F.2d 14 (2d Cir. 1992)......................................................................................9

*F.H. Krear & Co. v. Nineteen Named Trs.*,
    810 F.2d 1250 (2d Cir. 1987).............................................................................9, 10

*Francois v. Mazer*,
    2012 WL 3245439 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 532 F. App'x 28 (2d Cir.
    2013) ......................................................................................................................5

*Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*,
    2020 WL 9762874 (S.D.N.Y. May 29, 2020) ...........................................2, 4, 5, 10

*Gupta v. Headstrong, Inc.*,
    2020 WL 5764389 (S.D.N.Y. Sept. 28, 2020), *aff'd*, 2021 WL 4851396 (2d
    Cir. Oct. 19, 2021) .................................................................................................9

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
    2020 WL 5731953 (S.D.N.Y. Sept. 24, 2020)........................................................2

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*,
  291 F. Supp. 3d 554 (S.D.N.Y. 2018)......................................................................7

*Kahlil v. Original Old Homestead Rest., Inc.*,
  657 F. Supp. 2d 470 (S.D.N.Y. 2009)......................................................................9

*Kassim v. City of Schenectady*,
  415 F.3d 246 (2d Cir. 2005)..............................................................................5, 9

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998)..................................................................................7

*Lochren v. Cnty. of Suffolk*,
  344 F. App'x 706 (2d Cir. 2009) ...........................................................................8

*LV v. New York City Dept. of Educ.*,
  700 F. Supp. 2d 510 (S.D.N.Y. 2010) .................................................................5, 8

*Matusick v. Erie Cnty. Water Auth.*,
  774 F. Supp. 2d 514 (W.D.N.Y. 2011), *aff'd in part, rev'd in part*, 739 F.3d 51
  (2d Cir. 2014).......................................................................................................5

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017)..................................................................................6

*Sidley Holding Corp. v. Ruderman*,
  2009 WL 6047187 (S.D.N.Y. Dec. 30, 2009) , *report and recommendation
  adopted*, 2010 WL 963416 (S.D.N.Y.  Mar. 15, 2010) ..........................................10

*Tabatznik v. Turner*,
  2016 WL 1267792 (S.D.N.Y. Mar. 30, 2016) .........................................................2

*Themis Cap. v. Democratic Republic of Congo*,
  2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014)..........................................................2

*Thor 725 8th Avenue LLC v. Goonetilleke*,
  2015 WL 8784211 (S.D.N.Y. Dec. 15, 2015), *aff'd*, 675 F. App'x 31 (2d Cir.
  2017) ..............................................................................................................3, 12

*U.S. for Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt
  Meridian Constr. Corp.*,
  95 F.3d 153 (2d Cir. 1996)...................................................................................11

*Vista Outdoor Inc. v. Reeves Family Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) .........................................................7

*Wells Fargo Bank v. 5615 N. LLC*,
  2023 WL 7394340 (S.D.N.Y. May 4, 2023) ........................................................2, 3

iii

## PRELIMINARY STATEMENT

Plaintiff Greenlight Capital, Inc. respectfully submits this Reply Memorandum of Law in Support of its Motion for Attorneys' Fees and Costs (the "Motion").[1]

Defendant's core argument is that the Court should reduce Plaintiff's fees because this case was legally "straightforward" and devoid of factual disputes.  If Defendant had taken that position when this case began, he could have avoided all the fees of which he now complains.  But that ship sailed when Defendant asserted a slate of legal defenses and insisted on conducting discovery because, as this Court held, his defenses were completely meritless and he did not address any purported factual issues through discovery.  Simply put, Defendant's obligation to repay Plaintiff was never genuinely in dispute.

Nevertheless, Defendant chose to delay the inevitable and forced Plaintiff to chase him for a judgment.  That required hiring and paying attorneys to address the mess of legal and procedural hurdles that Defendant introduced into this case.  Defendant agreed to pay those fees, and the Court should not reward his evasiveness with a discount that will come out of Plaintiff's pocket.

## ARGUMENT

### A.    Akin's Hourly Rates are Reasonable

To determine a reasonable hourly rate, courts should "bear in mind *all* of the case-specific variables" and consult twelve factors that include, *inter alia*, the time and skill required, counsel's experience, customary rate, and relationship with a client, the results obtained, and awards in similar cases.  *See* Opening Brief at 8 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008)).

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in Plaintiff's Memorandum of Law in Support of its Motion for Attorneys' Fees and Costs (ECF No. 33) ("Opening Brief").

1

Defendant's opposition brief (the "Opposition") casts aside this holistic assessment and insists there is a one-size-fits-all hourly rate "standard" that applies here. He is wrong, and his "standard" is artificially depressed.

To illustrate, Defendant's proffered "standard" limits partner rates to $650 per hour. Opposition at 4-5. There are many problems with this figure.

First, Defendant's "standard" is immediately dubious considering that his counsel's rates have vastly exceeded this "standard" for more than three years, even in their suburban offices. *See Abrams Fensterman, LLP v. Sausa, Maria et al.*, No. 0619591/2023 (N.Y. Sup. Ct., Nassau Cty. Dec. 6, 2023) (NYSCEF No. 10, Ex. 3) (May 2022 Abrams Fensterman invoice billing $725 per hour for partner in Nassau County).

Second, Defendant's standard is based on outdated rates. It is beyond reproach that hourly rates increase over time. *See Wells Fargo Bank v. 5615 N. LLC*, 2023 WL 7394340, at *8 (S.D.N.Y. May 4, 2023) (noting that it was "accounting for inflation" when comparing rates at issue to rates from caselaw). Here, Defendant deflates his standard by anchoring it with fee awards for work performed six to ten years ago. *See Tabatznik v. Turner*, 2016 WL 1267792 (S.D.N.Y. Mar. 30, 2016) (work performed 2014-2015); *Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, 2020 WL 9762874 (S.D.N.Y. May 29, 2020) (work performed 2017-2019); *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 2020 WL 5731953 (S.D.N.Y. Sept. 24, 2020) (same).

Third, Defendant's cases are not only outdated, but fail to represent the reasonable range of rates *at the time they were awarded*. More than a decade ago, courts observed that "partner billing rates in excess of $1,000 an hour, are by now not uncommon[.]" *Themis Cap. v. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014). And those rates have in fact doubled in the last decade. *See* Opening Brief at 10 (citing *An v. Despins*, 2024 WL 1157281,

2

at *2-4 (S.D.N.Y. Mar. 18, 2024) (approving $1,990 hourly partner rate); *ATX Debt Fund 1, LLC v. Paul*, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (approving $1,777.50 hourly partner rate)).

Defendant avoids engaging with Plaintiff's more recent, relevant cases. Instead, he urges the Court to ignore a decade of rate inflation, and rely on rates that are not just old, but remarkably low compared to rates awarded in contemporaneous cases. That is because Defendant's cherry-picked low-rate cases were all low-stakes, single-proceeding disputes, involving unsophisticated subject matter. *See* Opposition at 4-5 (citing *Wells Fargo*, 2023 WL 7394340 (foreclosure action); *Thor 725 8th Avenue LLC v. Goonetilleke*, 2015 WL 8784211 (S.D.N.Y. Dec. 15, 2015), *aff'd*, 675 F. App'x 31 (2d Cir. 2017) (landlord-tenant action)).

Defendant attempts to convince the Court that this is a "simple loan note case" to palm off these cases as instructive. Opposition at 3. The Court should not fall for it. Unlike Defendant's cases, this matter is part of a complex, intensely litigated, multiple-proceeding dispute. That dynamic informed Plaintiff's decision to hire Akin, and is critical to assessing the reasonableness of Akin's rates.

Defendant asserts that "no reasonable client would use Akin…for this type of matter absent a fee-shifting provision." Opposition at 3. That is nonsense. Long before Plaintiff commenced this action, Akin sent Defendant multiple letters demanding repayment. Instead of repaying Plaintiff, Defendant filed two offensive actions against Plaintiff that he later withdrew and reasserted in arbitration. Since then, Plaintiff learned that Defendant is inclined to use vexatious litigation and other wrongful conduct[2] to exert pressure on Plaintiff in hopes of avoiding

---

[2] Shortly after this case was commenced, Plaintiff retained Akin to bring an action against Defendant in federal court, arising from Defendant's theft of confidential information and tortious misrepresentations. *Greenlight v. Fishback*, No. 24-cv-04832-PAE (S.D.N.Y.) (the "Confidentiality Case").

repayment.  Plaintiff did not retain Akin to pile on recoverable fees.  Plaintiff retained Akin for all matters involving Defendant—including those with no contractual basis for fees—due to Defendant's evasive conduct and harassment campaign against Plaintiff.  And even with contractual fee provisions here, the likelihood of recovering *anything* from Defendant was always uncertain, given his persistent refusal to repay the First Note despite having no colorable defenses.

In sum, Defendant initiated a host of litigation knowing that Akin represented Plaintiff, indefensibly refused to pay Plaintiff, and forced Plaintiff's hand in litigation.  Plaintiff's selection of Akin to handle this matter was eminently reasonable.

## B.    <u>Akin's Hours are Reasonable</u>

Akin billed a reasonable number of hours in this case.  Nevertheless, Defendant tries to frame Akin's work as disproportionate by again arguing that this case was "simple," and even mischaracterizes Plaintiff as taking the position that this case was "straightforward."  *See* Opposition at 11-12.  To be clear, this case *should have been* straightforward.  But it was not, and all its complexity was of Defendant's own making.

Defendant first focuses on the total hours Akin billed as if the figure is somehow remarkable, but never actually articulates why that total is excessive.  *See* Opposition at 7-9.  To recap, Akin took this case from start to finish.  It drafted the complaint, moved for summary judgment, conducted discovery, and performed various other tasks over the course of thirteen billable months.  *See* Opening Brief at 20-21.  In that time, Akin billed 438.5 hours, which averages fewer than 34 hours *per month*, for the *entire team*.

Defendant cites no comparable cases suggesting that this total time was unreasonable.  In fact, Defendant's own authorities underscore Akin's reasonableness.  In *Global Brand Holdings*, the court found that billing 340 hours was excessive for the breach of contract action before it. 2020 WL 9762874, at *8.  Notably, however, that decision did not discuss any merits discovery;

4

the work "involve[ed] primarily settlement negotiations and a summary judgment motion," for which the court deemed 240 hours appropriate.  *Id.*

Had Akin's work been similarly limited here, it would have stopped billing after completing summary judgment briefing, *see* ECF No. 20, at which point Akin had billed fewer than 200 hours.  *See* Baldini Decl. Ex. A.  Not only was this total well below the approved total hours in *Global Brand Holdings*, but it also included substantial discovery-related efforts.  Akin's hours were demonstrably reasonable against this benchmark, and Defendant's baseless insistence on discovery was the only reason Akin continued billing hours after summary judgment.

Defendant's Opposition continues by citing various decisions imposing drastic reductions for excessive hours, but conspicuously avoids any factual comparisons.  Unsurprisingly, these cases involved systemic timekeeping issues that are simply not present here.  *See Matusick v. Erie Cnty. Water Auth.*, 774 F. Supp. 2d 514, 532 (W.D.N.Y. 2011) (reducing hours where counsel attempted to substantiate over 1,100 hours with vague and repetitive time entries), *aff'd in part, rev'd in part*, 739 F.3d 51 (2d Cir. 2014); *Francois v. Mazer*, 2012 WL 3245439, at *2 (S.D.N.Y. Aug. 6, 2012) (reducing hours due to pervasive issue with entries for non-compensable claims), *aff'd*, 532 F. App'x 28 (2d Cir. 2013).

Defendant wrongly suggests that only cases involving novel legal issues are time consuming.  *See* Opposition at 8.  Courts recognize that hours may be the result of an opponent's conduct, *see Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005), and that complexity can stem from "logistical and factual" issues.  *LV v. New York City Dept. of Educ.,* 700 F. Supp. 2d 510, 515-16 (S.D.N.Y. 2010).  These were the primary drivers of Akin's hours, as Defendant needlessly complicated the case by asserting meritless defenses and insisting on pointless discovery.

For instance, Defendant's smattering of half-a-dozen vague and factually threadbare defenses forced Akin to perform a significant amount of legal research and writing to liberally construe and dispose of those defenses in summary judgment briefing.  Defendant's attempt to minimize those efforts through creative counting of brief pages or time entries specifically mentioning "affirmative defenses" is nothing but disingenuous.  Opposition at 11.  And that multiple attorneys spent several hours working on the brief in one day during an expedited drafting process is entirely unremarkable.

There is also nothing remarkable about Akin's efforts to review documents and prepare for a critical deposition, which, again, was only necessary in the first instance due to Defendant's insistence on discovery.  Further, the time required for those efforts was a direct result of Defendant's nebulous, unintelligible defenses.  Specifically, Defendant did not support his defenses with factual allegations, cite cases articulating the legal theories underlying his defenses in dispositive briefing, or produce any documents.  Defendant provided virtually no boundaries on the theories he might try to advance at his deposition.  Thus, Akin was forced to prepare examination materials for all possible variations of his "defenses," exponentially increasing the complexity of deposition-related work.

Now that Plaintiff has achieved a complete victory, Defendant supposes that it must have been "simple" to do so.  That reasoning is flawed and ignores both his obstruction and Akin's efforts.

C.    **Block-Billing Does Not Warrant Reductions**

No fee reduction is warranted here for block-billing, which "is permissible so long as the records allow the court to conduct a meaningful review of the hours requested."  *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017).

Defendant's authorities acknowledge that block-billing poses problems only when entries are vague, billed for excessive amounts of time, or where some other case-specific reason requires disaggregation. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (affirming reduction in fees that was assessed "in light of vague or otherwise inconsistent [time sheet] entries, as well as other unrecoverable hours"); *Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona,* 2021 WL 1222159, at *9-10 (S.D.N.Y. Mar. 31, 2021) (finding only some instances of block-billing were inappropriate, even where "many" of plaintiffs' time entries were "overly vague"); *Vista Outdoor Inc. v. Reeves Family Tr.,* 2018 WL 3104631, at *7-8 (S.D.N.Y. May 24, 2018) (acknowledging that "there is no per se rule against block billing," but reducing hours for entries that were vague or excessive, *i.e.*, five hours of more); *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.,* 291 F. Supp. 3d 554, 563-64 (S.D.N.Y. 2018) (reducing hours because block-billing did not allow disaggregating fees incurred due to separate groups of defendants).

None of these issues are present here, and Akin's time records are sufficiently detailed to enable a meaningful review of the hours spent. While Defendant lists Akin's block-billed entries, he tellingly avoids identifying any entries as vague. In fact, Defendant separately argues that, based on the granularity in Akin's time entries, the Court can identify portions of Akin's work that are "administrative," and refuse compensation for those portions. Opposition at 16-18. These arguments (which are wrong for separate reasons) leave Defendant with no latitude to argue that Akin's entries are vague.

Finally, courts are typically concerned with block-billed entries for excessive amounts of time, which is not a pervasive issue here. *See Abdell v. City of New York*, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing acceptable "for temporally short entries combining related tasks"); *Charles v. City of New York*, 2014 WL 4384155, at *6 (S.D.N.Y. Sept. 4, 2014)

(reducing fees where many block-billed entries spanned more than six hours).  Akin's invoices contain over 250 entries, but Defendant identifies only *five* that exceed six hours.

### D.    Akin's Team Size Does Not Warrant Reductions

Akin's team size does not warrant a fee reduction here.  Defendant argues that "overstaffing" can warrant fee reductions, but ignores that reductions in his cited cases were not solely due to attorney team sizes (which had *dozens* of attorneys), but because those attorneys were performing duplicative or unnecessary work.  *Lochren v. Cnty. of Suffolk,* 344 F. App'x 706, 709 (2d Cir. 2009) (affirming reduction because staffing of 16 attorneys and 13 paralegals to team "result[ed] in the needless duplication of work"); *LV,* 700 F. Supp. 2d at 524-25 (reducing hours by a mere five percent where the case was staffed by 29 attorneys and 19 non-legal staff, such that "duplication of effort was inevitable").

These cases are simply inapposite.  Defendant identifies no duplicative time entries, although he feigns "support" with an unexplained, passing reference to his block-billing exhibit (which is a separate issue altogether).  Opposition at 12.

Defendant cannot identify duplicative entries because there are none.  Team members were added only for purposes of efficiency.  This team started with attorneys Baldini and Slemmer. Attorney Reichelscheimer joined to perform work at a lower rate than attorney Slemmer.  Attorney Frohman only briefly joined to assist with summary judgment, which was itself an effort to avoid significant discovery costs.  Other non-attorney professionals billed to this matter to complete appropriate tasks at a lower rate than the team's attorneys.

Defendant's overstaffing arguments are particularly disingenuous given his objections to Akin's rates.  The only way to work more economically here was for attorneys Baldini and Slemmer to delegate tasks to timekeepers with lower rates, which they did.  The Court should not

humor Defendant's objections to those attorneys' rates when Defendant simultaneously seeks to penalize Akin for staffing new timekeepers to assist at lower rates.

### E.    The Amount in Controversy Does Not Warrant Reductions

No fee reduction is warranted based on the amount in controversy, which Defendant posits is "generally the ceiling" on awardable fees under a fee-shifting clause.  Opposition at 14 (quoting *Diamond D Enters. USA, Inc. v. Steinsvaag*  979 F.2d 14, 19 (2d Cir. 1992)).  The Second Circuit cautioned, however, that this principle "is only a rule of thumb" and "a starting point."  979 F.2d at 20.  It has since explained that it is "difficult to generalize about the appropriate size of the fee in relation to the amount in controversy" because "an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel" which can cause "the hours required to litigate even a simple matter [to] expand enormously[.]" *Kassim*, 415 F.3d at 252; *see also Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) ("[T]he simple disproportion between a plaintiff's recovery and the fee applied for is not a proper basis for a reduction in an otherwise reasonable fee.").

As discussed above, had Defendant not insisted on discovery, Plaintiff's fees would be well below the amount in controversy.  Either way, Defendant's argument fails, as his own authorities confirm that a party can recover fees far greater than the amount of controversy.  *See Gupta v. Headstrong, Inc.*, 2020 WL 5764389, at *7 (S.D.N.Y. Sept. 28, 2020) (awarding fees of $105,081.05 after reductions where the amount in controversy was, at most, $11,500), *aff'd*, 2021 WL 4851396 (2d Cir. Oct. 19, 2021).

### F.    Plaintiff is Entitled to Fees Related to this Motion

Plaintiff is entitled to recover fees for preparing this Motion.

Defendant cites *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250 (2d Cir. 1987), which observed that "a general contract provision for the shifting of attorneys' fees does not

authorize an award of fees for time spent in seeking the fees themselves." *Id.* at 1266. But the Second Circuit acknowledged that "[o]f course, it is possible to contract for such an allowance" in other agreements, *id.* at 1267 (citation omitted), and Defendant's own authorities acknowledge this possibility. *See Glob. Brand Holdings*, 2020 WL 9762874, at *6 ("Time spent preparing a fee application may be awarded.").

Specifically, Defendant overlooks that, outside the realm of simple fee-*shifting* provisions*, agreements that provide attorneys' fees for enforcement of a party's rights can include fee application work. *Billybey Marina Servs., LLC v. Bouchard Transp. Co.,* 2021 WL 4950835, at *5 (S.D.N.Y. Oct. 25, 2021) (agreement providing "reasonable attorneys' fees" in connection with "legal action … to enforce this Agreement" entitled plaintiff to fees for fee application); *Sidley Holding Corp. v. Ruderman,* 2009 WL 6047187, at *23 (S.D.N.Y. Dec. 30, 2009) (movant entitled to fees incurred to prepare fee request where contract obligated adversary to reimburse party "for 'enforcement' of contract"), *report and recommendation adopted*, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010).

Under Section 7 of the First Note, Defendant agreed to pay "all costs of collection, including without limitation, reasonable attorneys' fees," if the indebtedness went unpaid. ECF No. 15-1. Section 3 explicitly includes "any fees or expenses owing under paragraph 7" in the mandatory prepayment due upon termination of Defendant's employment, and in Section 11, Defendant agreed to indemnify Plaintiff from "any and all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses)" suffered by Plaintiff "arising out of or due to" a breach. *Id.*

These provisions reflect Plaintiff's broad entitlement to fees incurred when enforcing its rights, including pursuing legal fees owed under the agreement. In contrast, Defendant's cited

cases involved readily distinguishable fee-shifting provisions that did not provide fees for collection or enforcement and were construed more narrowly.

### G.    Plaintiff Does Not Seek Reimbursement for Administrative Tasks

Defendant contends that time billed for administrative tasks is non-compensable, Opposition at 16-18, but fails to show that Plaintiff actually billed for "administrative" tasks. Defendant simply lists tasks that *he concludes* are administrative, but cites no cases finding similar entries non-compensable. That is because Defendant effectively seeks to penalize Plaintiff for the detail in its time entries by splitting hairs on the distinction between "legal" and "administrative" work. He ignores the reality that performance of smaller tasks—like drafting and sending emails— is inherent to substantive work, and that certain entries (*e.g.*, those related to "coordination," document filings, *etc.*) actually memorialize delegation of administrative tasks to appropriate personnel. *See id.*

### H.    Plaintiff's Costs are Compensable

Plaintiff's costs are compensable.   Most of Plaintiff's costs are from electronic research. Defendant argues these are non-compensable. Opposition at 18 (citing *U.S. for Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996)). He is just plain wrong.

The Second Circuit has explicitly cabined *Evergreen* to the context of compensable Rule 11 sanctions, and contrasted *Evergreen*'s result with other contexts where research expenses are compensable. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 97-98 (2d Cir. 2004) ("[I]n the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award. If [a firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award.").

The same goes for Plaintiff's other invoiced expenses, which are "adequately documented, reasonable, and of the type commonly reimbursed by courts in this district," and substantiated by the Baldini Declaration. *See Thor*, 2015 WL 8784211, at *16 (the "statement of costs incurred, made under penalty of perjury in declaration, constitutes adequate documentation").[3]

## **CONCLUSION**

For the reasons set forth above and in the Opening Brief, Plaintiff respectfully requests that this Court award attorneys' fees in the revised amount of $433,733 and costs in the amount of $35,332.47.

Dated: May 19, 2025
      New York, New York

                    Respectfully submitted,

                    AKIN GUMP STRAUSS HAUER & FELD LLP

                    By: */s/ Stephen M. Baldini*__
                    Stephen M. Baldini
                    Akin Gump Strauss Hauer & Feld LLP
                    One Bryant Park
                    New York, New York 10036
                    Telephone: 212-872-1000
                    Fax: 212-872-1002
                    sbaldini@akingump.com

                    *Counsel for Plaintiff Greenlight Capital, Inc.*

---

[3] Finally, Plaintiff deducts $6,012.50 from its fee request, which is the amount of four entries that Defendant identified relating to the Confidentiality Case. *See* Opposition at 19. Plaintiff confirms that no other entries relate to other matters, as all other entries during the period at issue relate to discovery, which did not begin in the Confidentiality Case until 2025, or issues that are unique or clearly related to this matter (*e.g.*, a court conference, fee motion work).

## WORD COUNT CERTIFICATION

 I hereby certify that the foregoing document complies with the word count limit set forth in Rule A.2.h. of the Individual Practices of Chief Judge Laura Taylor Swain, excluding the parts otherwise exempted by such rule, because it contains 3,494 words.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.

Dated: May 19, 2025
  New York, New York

        By:  */s/ Stephen M. Baldini*
        Stephen M. Baldini


        *Counsel for Plaintiff Greenlight Capital, Inc.*