UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREENLIGHT CAPITAL, INC.,

Plaintiff,

v.

JAMES FISHBACK,

Defendant.

1:24-CV-02299-LTS

## I. MEMORANDUM OPINION AND ORDER

Plaintiff Greenlight Capital, Inc. ("Plaintiff" or "Greenlight") brought a one-count breach of contract action against Defendant James Fishback ("Defendant" or "Fishback"). On March 31, 2025, the Court directed entry of judgment in favor of Plaintiff. (Docket entry no. 30 ("MSJ Order").) Plaintiff now moves for an award of attorneys' fees and costs. (Docket entry no. 32; docket entry no. 33 ("Pl. Mem.") at 5, 28.)

The Court has considered carefully the parties' submissions. (Pl. Mem.; docket entry no. 34 ("Baldini Decl."); docket entry no. 39 ("Def. Mem."); docket entry no. 38 ("Kelton Decl."); docket entry no. 42 ("Pl. Reply"); docket entry no. 47 ("Pl. Supp.")[1].) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## II. BACKGROUND

On March 31, 2025, the Court directed entry of judgment in favor of Plaintiff on Plaintiff's sole claim in this action, which was for breach of a Second Amended and Restated

[1] Plaintiff's request for permission to file a supplemental declaration (docket entry no. 47) is granted. See Arthur v. Orchestrate Business LLC, 2025 WL 2201067, at *2 (S.D.N.Y. Aug. 1, 2025) ("Generally, courts in this Circuit look 'favorably on efforts to supplement the record absent prejudice or bad faith.'" (citation omitted)).

Promissory Note and Security Agreement (the "First Note"). (MSJ Order at 13-14.)[2] Plaintiff now moves to recover $433,733 in attorneys' fees and $35,332.47 in costs (Pl. Reply at 16)[3] pursuant to section 7 of the First Note, which provides that "[t]he Borrower [Defendant] hereby (a) agrees to pay all costs of collection, including without limitation, reasonable attorneys' fees, if the principal of or interest on this Note is not paid in full when the same shall become due and payable hereunder" (docket entry no. 15-1 ("First Note") § 7).[4] Plaintiff's motion is supported by the declaration of Stephen M. Baldini, which provides detailed contemporaneous billing records. (See Baldini Decl.; docket entry no. 34-1 ("Baldini Decl. Ex. A").)

## III. DISCUSSION

Defendant does not dispute the validity or enforceability of the fee-shifting provision in section 7 of the First Note. See NewJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."). Instead, Defendant raises a

2 Docket entry pincites are to ECF-designated page numbers.

3 Plaintiff initially sought a slightly higher attorneys' fee award. (Pl. Mem. at 28). In its Reply, however, Plaintiff deducted $6,012.50 from its fee request to offset four time entries that related to another matter and were incorrectly included in its initial request. (Reply at 16 n.3.)

4 Section 10 of the First Note further provides that Defendant agrees to "indemnify" Plaintiff "from any and all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses) that the [Plaintiff] may suffer arising out of or due to any inaccuracy or breach of any of the representations and warranties or the nonfulfillment of any covenant, undertaking, agreement or other obligation, of the [Defendant] contained in th[e] Note." (First Note § 10.)

number of objections to the reasonableness and propriety of the fees and costs sought. The Court addresses each objection in turn, finding most, but not all, to be meritless.

A. Fees

"[T]he rule in New York is that 'when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'" Diamond D Enters. USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (citation omitted); see also CARCO GROUP, Inc. v. Maconachy, 718 F.3d 72, 86 (2d Cir. 2013). "In determining reasonable attorneys' fees, courts customarily begin by calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" White v. Apple Bank for Sav., 658 F. Supp. 3d 151, 156 (S.D.N.Y. 2023) (quoting Holick v. Cellular Sales, 48 F.4th 101, 106 (2d Cir. 2022)). The Court has "broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets, No. 12-CV-9412-PAE, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

Applying these standards, the Court finds that the tasks performed and time spent here are well documented and reasonable. However, as explained below, the hourly rates must be adjusted downward to fashion a reasonable award.

1. Whether the Hourly Rates Are Reasonable

During the pendency of this action, Plaintiff's counsel, Akin Gump Strauss Hauer & Feld LLP ("Akin"), customarily charged $1,975 per hour for work by partner Stephen M. Baldini and between $925 and $1,310 per hour for work by associates Daniel Slemmer, Evan D.

Frohman, and Hannah J. Reichelscheimer.[5] (Baldini Decl. ¶ 10.) Akin also customarily charged between $305 and $455 per hour for work by paralegals Michelle Holness and Kimberly Goycochea, as well as between $445 and $515 per hour for work by electronic discovery specialists Jim Ma, Sean Lay, and Massai Leonard. (Baldini Decl. Ex. A. at 16, 20.) Akin billed the individuals' time at these rates and then discounted the fees charged to Plaintiff by 10%. (Baldini Decl. ¶ 10.) The charged hourly rates—and the rates that Akin submits for the Court's approval (Akin's "Requested Rates")—thus were: $1,777.50 for partner Baldini; between $832.50 and $1,179 each for associates Slemmer, Frohman, and Reichelscheimer; between $274.50 and $409.50 each for paralegals Holness and Goycochea; and between $400.50 and $463.50 each for electronic discovery specialists Ma, Lay, and Leonard.

In determining whether an hourly rate is reasonable, a district court should "bear in mind all of the case specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees" to determine "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original). These factors may include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length

---

[5] The work in question was principally performed in 2024. In that year, Akin's customary hourly billing rates were $1,975 for Baldini, $1,090 for Slemmer, $1,090 for Frohman, and $925 for Reichelscheimer. In 2025, the hourly rates were $1,310 for Slemmer and $1,095 for Reichelscheimer (Baldini and Frohman did not bill any time to this matter in 2025.). (Baldini Decl. ¶ 10.)

> of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citation omitted). The Court will first analyze the reasonableness of the attorneys' Requested Rates and then analyze the reasonableness of the Requested Rates for the paralegals and electronic discovery specialists.

a. Attorneys

Many of the applicable factors generally support the reasonableness of the hourly rates of Akin's attorneys. First, Plaintiff actually paid the rates charged by Akin. (Baldini Decl. ¶ 9); see Hancock v. I.C. Sys., Inc., 592 F. Supp. 3d 250, 255 (S.D.N.Y. 2022) ("[T]he range of rates that plaintiff's counsel actually charges their clients . . . is obviously strong evidence of what the market will bear." (internal quotation omitted)). Second, Akin's attorneys had extensive experience in litigating complex commercial litigation matters similar to this case, and the lawyers and support staff had training, education, experience, and professional standing commensurate with the tasks they performed. (Baldini Decl. ¶¶ 3, 11.)

Third, the rates are consistent with rates awarded in this District for counsel of comparable skill and experience. See Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr., 652 F.3d 277, 290 (2d Cir. 2011). Baldini's discounted rate ($1,777.50) is toward the top of the range of rates awarded for the work of partners of large law firms in this District. See e.g., An v. Despins, No. 22-CV-10062-VEC-JW, 2024 WL 1157281, at *2-4 (S.D.N.Y. March 18, 2024) (approving a $1,990 hourly rate for a law firm partner); ATX Debt Fund 1, LLC v. Paul, No. 19-CV-8540-JPO, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (approving a $1,975 hourly rate for a law firm partner, subject to a 10% reduction (i.e., $1,777.50)); Wells Fargo Trust Co., N.A. v. Fast Colombia S.A.S., No. 23-CV-603-PGG-RWL, 2023 WL 8591953, at *6, *9 (S.D.N.Y. Oct. 16, 2023) (approving a $1,750 hourly rate for a

partner, subject to a 20% reduction (i.e., $1,400)), report and recommendation adopted, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023). Likewise, associates Slemmer's, Frohman's, and Reichelscheimer's rates (between $832.50 and $1,179) are toward the top of the range of rates awarded for associates' work in this District. See e.g., ATX, 2024 WL 2093387, at *5 (approving a $1,265 hourly rate for an associate, subject to a 10% reduction (i.e., $1,138.50)); Wells Fargo, 2023 WL 8591953, at *6, 9 (approving a $1,240 hourly rate for an associate, subject to a 20% reduction (i.e., $992)); An, 2024 WL 1157281, at *2-4 (approving an $895 hourly rate for an associate).

Fourth, Akin's rates are reasonable in light of the longstanding attorney-client relationship between Akin and Plaintiff. Akin has represented Plaintiff on various matters for over 25 years, and, most recently, Akin has represented Plaintiff in all of Plaintiff's disputes with Defendant which, in addition to this action, included two lawsuits, one administrative action, and one arbitration, as well as numerous miscellaneous matters, such as pre-dispute demand letters. (Baldini Decl. ¶¶ 13-14.) All of these disputes arose from related, contentious circumstances, and Akin used its extensive experience litigating against Defendant to address Defendant's claims and conduct in this action. (Id. ¶ 17.) Fifth, Akin obtained a complete victory for Plaintiff, obtaining a money judgment of $215,174.47 plus pre-judgment and post-judgment interest. (MSJ Order at 13-14.)

In his opposition, Defendant cherry-picks cases that he contends establish a reasonable hourly rate standard that is much lower than that charged by Akin. (Def. Mem. at 10-13.) None of the cases cited by Defendant, however, are apposite; all are either outdated or involved low-stakes, single-proceeding disputes concerning unsophisticated subject matter. Defendant also argues that it was unreasonable for Plaintiff to hire sophisticated counsel, such as

Akin (Def. Mem. at 9-10), but that argument lacks merit. As discussed above, although the ultimate issues were not ones of extraordinary complexity, this action was one of many related cases with which Akin had extensive familiarity, and, as discussed below, this action involved substantial litigation and discovery that was entirely driven by Defendant's conduct. See In re Relativity Fashion, LLC, 565 B.R. 50, 68 (Bankr. S.D.N.Y. 2017).

While the Court is unpersuaded that Akin's hourly rates should be cut as drastically as Defendant proposes, the Court nonetheless finds that a modest reduction in the attorneys' hourly rates is warranted. In a recent decision in a related case between the same parties, the Hon. Judge Paul A. Engelmayer reduced the attorneys' requested rates by 20%, reasoning that "[t]his case was clearly important to Greenlight, but did not present 'bet-the-house' stakes or require specialized legal experience that might justify above-market rates." Greenlight Cap. Inc. v. Fishback, No. 24-CV-4832-PAE, 2026 WL 1801182, at *7 (S.D.N.Y. June 23, 2026). The same is true here. This case was no doubt tedious to litigate and unnecessarily protracted, largely because of Defendant's dilatory tactics. But as explained below, the case was a garden-variety contract dispute; Defendant's Answer admitted all material allegations entitling Plaintiff to recovery; and the Court ultimately deemed Plaintiff's summary judgment motion unopposed when evaluating it. The legal questions in this case were not so novel and difficult, nor was the experience required to litigate this case so great, as to justify hourly rates at the very high end of those awarded in this District.

Nevertheless, this case is not identical to Judge Engelmayer's in all material respects. The end result in Judge Engelmayer's case was a joint factual stipulation and permanent injunction against Fishback, id. at *3-4, while this case ended in a full money judgment following summary judgment motion practice. That difference justifies a slightly

greater fee award in this case. Accordingly, the Court finds that a 10% reduction in the attorneys' Requested Rates is warranted to better align this case with District standards for comparable cases.

b. Paralegals and Electronic Discovery Specialists

The Court now turns to the hourly rates charged by Akin's paralegal and electronic discovery specialists. Courts in this District generally award similar hourly rates for litigation support personnel like paralegals and electronic discovery experts. Abraham v. Leigh, No. 17-CV-5429-KPF, 2020 WL 5512718, at *11 (S.D.N.Y. Sept. 14, 2020). Here, Akin's Requested Rates for support staff exceed those that courts in this District typically award for comparable support staff work.[6] Plaintiff does not adequately argue or proffer evidence to demonstrate that the litigation support work here was sufficiently complex—or that the support staff had such special expertise, training, or capabilities—to justify the above-market hourly rates Akin now requests. (See Pl. Reply at 5-8; Baldini Decl. ¶ 12.) The Court therefore finds that a 30% reduction in the Requested Rates for support staff is warranted to better align the Requested Rates with prevailing rates in this District. See Greenlight Cap. Inc., 2026 WL 1801182, at *7.

2. Whether the Total Number of Hours Expended Was Reasonable

Akin has billed a total of 438.50 hours to this matter since October 2023. (Baldini Decl. ¶¶ 5, 25.) These hours included extensive work on pre-litigation matters, pleadings, and

---

[6] See, e.g., StoneX Grp., Inc. v. Shipman, No. 23-CV-613-JGK-VF, 2025 WL 1212165, at *5 (S.D.N.Y. Apr. 25, 2025) (holding $424.71 hourly rate to be unreasonable and awarding $150 hourly rate instead); Access Bio, Inc. v. Div. 5 Labs, Inc., No. 23-CV-4820-LGS, 2024 WL 3084990, at *3 (S.D.N.Y. June 20, 2024) (holding $400 hourly rate to be unreasonable and awarding $150 hourly rate instead); but see ATX, 2024 WL 2093387, at *5 (approving a $616.50 hourly rate); Wells Fargo, 2023 WL 8591953, at *6, *9 (approving a $435.20 hourly rate).

case management, substantial time devoted to discovery activity, summary judgment motion practice, and time spent preparing the instant motion for attorneys' fees. (Baldini Decl. ¶¶ 20, 25.) "In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." White v. Apple Bank for Sav., 658 F. Supp. 3d 151, 156-57 (S.D.N.Y. 2023) (quoting Raja v. Burns, 43 F.4th 80, 87 (2d Cir. 2022)). Defendant raises various arguments contesting the number of hours expended on this case, which the Court will address in turn.

a. Complexity of the Case

Defendant contends that Akin expended an unreasonable amount of time on this case, which Defendant characterizes as "straightforward." (Def. Mem. at 13-18.) While it is true that the substantive merits of the case—a garden-variety contract dispute—were not particularly complex, Defendant engaged in dilatory litigation tactics that unnecessarily prolonged and complicated the matter. At the outset of this case, in his Answer, Defendant admitted all of Plaintiff's material allegations that entitled Plaintiff to recovery, so Plaintiff took the position that discovery was unnecessary and quickly moved for summary judgment. (See MSJ Order at 11-13.) Defendant nonetheless insisted on discovery, ostensibly to develop defenses that he alluded to in his Answer in summary fashion. After insisting that Plaintiff collect, review, and produce discovery (see Baldini Decl. ¶¶ 18-20), Defendant used none of that discovery to develop any defenses nor to oppose Plaintiff's summary judgment motion, despite having multiple opportunities to do so. (Docket entry no. 28 at 4 (Defendant declining to supplement opposition brief with further materials at close of discovery).) Indeed, the only deposition taken in the case was that of Defendant; Plaintiff proffers, and Defendant does not deny, that extensive preparation for the deposition was both challenging and crucial because Plaintiff's counsel was

forced to use it to establish the lack of foundation for Defendant's vaguely described defenses. (Pl. Mem. at 22-23.)

Ultimately, given Defendant's lackadaisical response to the motion, the Court treated Plaintiff's motion for summary judgment as unopposed and found Defendant's alleged defenses meritless. (MSJ Order at 10 & n.7, 12-13.) Because Defendant was "solely responsible for much of the time that plaintiff's counsel had to spend on the matter," the relative straightforwardness of this case provides no basis to reduce the total of hours expended in this case. See Li Rong Gao v. Perfect Team Corp., 10-CV-1637-ENV-CLP, 2017 WL 9481011, at *17 (E.D.N.Y. Jan. 11, 2017).[7]

Likewise, Defendant complains that Akin improperly overstaffed the case. (Def. Mem. at 19-20.) If anything, however, Akin employed a lean team comprised of one partner and three associates, with associates billing most of the work and the partner overseeing the case. (Baldini Decl. ¶ 27.) Akin has proffered its time sheets, which show that workstreams were efficient, that little work was duplicated amongst attorneys (Baldini Decl. ¶ 27; Baldini Decl. Ex. A), and that Akin spent reasonable amounts of time preparing for Fishback's deposition and revising Plaintiff's summary judgment papers (contra Def Mem. at 15-17). Defendant further contends that Plaintiff impermissibly billed for administrative tasks (Def. Mem. at 16-17, 22-24),

---

[7] At some point, Defendant offered to settle this case for the full amount of the First Note plus all outstanding interest. (Def. Mem. at 18 n.5.) This does not undermine the reasonableness of an award of attorneys' fees. "It is inappropriate for Defendant[] to raise settlement discussions to defend against a fee application" under Federal Rule of Evidence 408. Espinosa v. Perez, No. 18-CV-8855-LGS-SN, 2020 WL 2950978, at *3 (S.D.N.Y. Jan. 27, 2020), report and recommendation adopted, 2020 WL 1130743 (S.D.N.Y. Mar. 9, 2020). "But even if the Court were to consider settlement negotiations, '[a]bsent a showing of bad faith, a party's declining settlement offers should not operate to reduce an otherwise appropriate fee award,'" Espinosa, 2020 WL 2950978, at *3 (quoting Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992)), and Defendant has not made such a showing.

but the time sheet entries identified by Defendant document work that is properly considered legal work, not administrative tasks. (Compare, e.g., Baldini Decl. Ex. A at 11 ("Prepare summary judgment papers for filing."), with Solomon v. Allied Interstate, LLC, No. 12-CV-7940-CM, 2013 WL 5629640, at *1 (S.D.N.Y. Oct. 7, 2013) (defining "administrative tasks" to include, inter alia, mailing documents, making copies, and Bates stamping (citation omitted)).)

Thus, no deductions are necessary to address these objections.

b. Block Billing

Next, Defendant argues that Plaintiff impermissibly block-billed time entries. (Def. Mem. at 18-19.) This objection is meritless. Block billing is "permissible so long as the records allow the court to conduct a meaningful review of the hours requested." Restivo v. Hessemann, 846 F.3d 547, 591 (2d Cir. 2017). The time sheet entries Defendant contests are sufficiently detailed to permit meaningful review. None of the block-billed entries are for excessively long periods of time, and each block-billed entry groups descriptions in a logical manner (e.g., the 11/28/2023 block-billed entry is generally related to the complaint). Thus, a reduction for block billing is not warranted on this basis.

c. Fees for the Instant Motion

Finally, Defendant argues that Plaintiff is not entitled to the fees incurred in submitting this motion. (Def. Mem. at 21-22.) While it is true that "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves," F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1266 (2d Cir. 1987), courts have routinely held that language "expressly authorizing reasonable fees to enforce rights created by agreement" is "sufficiently specific to authorize applications covering work on the fee application itself." Greenlight Cap. Inc., 2026 WL 1801182, at *14 (collecting cases). In

the First Note, Defendant agreed to pay "all costs of collection, including without limitation, reasonable attorneys' fees, if the principal of or interest on this Note is not paid in full when the same shall become due and payable hereunder." (First Note § 7.) The reasonable attorneys' fees Akin incurred for the fee application fall within "costs of collection" to which Plaintiff has an express right under the First Note. Greenlight is thus entitled to the requested fees associated with this Motion, which are reasonable once subjected to the discounts discussed above. See Greenlight Cap. Inc., 2026 WL 1801182, at *14.

3. Amount in Controversy

Next, Defendant argues that fees should be reduced because the requested amount ($433,733 in attorneys' fees and $35,332.47 in costs) exceeds the judgment ($215,174.47 plus pre-judgment and post-judgment interest). (Def. Mem. at 20-21.) Courts "have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005). That is particularly true where, as here, a significant portion of the fees incurred by Plaintiff were caused by Defendant's litigation tactics. See id. ("[A]n attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel[.]"). Accordingly, the fact that the awarded fees are disproportionate to the amount in controversy does not warrant reduction.

B. Costs

Reasonable out-of-pocket costs are reimbursable to Plaintiff under section 7 of the First Note. 28th Highline Assocs., LLC v. Roache, No. 18-CV-01468-VSB-KHP, 2019 WL 10632851, at *6 (S.D.N.Y. July 29, 2019) (citing cases), report and recommendation adopted,

2020 WL 5659465 (S.D.N.Y. Sept. 23, 2020). Plaintiff seeks $35,332.47 in costs, and Defendant raises four objections related to costs, which the Court will consider in turn.

First, Defendant objects to $18,886.74 in electronic research costs. (Def. Mem. at 24; docket entry no. 38-5.) This objection is overruled. Where, as here, "[the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award." Dakus v. Koninklijke Luchtvaart Maatschappij, N.V., No. 22-CV-7962-RA-RWL, 2025 WL 1183676, at *10 (S.D.N.Y. Apr. 4, 2025) (quoting Arbor Hill, 369 F.3d at 98), report and recommendation adopted, 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025).

Second, Defendant objects to $2,757.00 in costs for "Color Copy."[8] (Def. Mem. at 24-25.) "[I]nternal copying costs for undescribed documents are not" reimbursable. Meide Zhang v. Liang Zhang, No. 16-CV-4013-LGS-SLC, 2020 WL 9256464, at *13 (S.D.N.Y. Dec. 21, 2020), report and recommendation adopted as modified on other grounds, 2021 WL 1154084 (S.D.N.Y. Mar. 26, 2021). Plaintiff does not "make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary." Tatum v. City of New York, No. 06-CV-4290-PGG-GWG, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010). Therefore, these costs will be disallowed.

Third, Defendant objects to $9,298.95 in costs for "Arbitrators/Mediators." (Def. Mem. at 24-25.) The arbitration/mediation covered a number of disputes between the parties, including the dispute here. (Def. Mem. at 25; Baldini Decl. ¶ 14.) Because Plaintiff makes no effort to apportion these arbitration and mediation costs, the entire amount will be disallowed.

---

8 Defendant only objects to $2,457.00. (Def. Mem. at 24.) This is a reference to the invoice dated September 11, 2024. (Docket entry no. 34-1 at 16.) However, there is another charge for "Color Copy" of $30.00 on the invoice dated November 9, 2024. (Docket entry no. 34-1 at 23.) That brings the total sum for "Color Copy" to $2,757.00.

Fourth, Defendant objects to $437.52 in costs for "Meals." (Def. Mem. at 24-25.) "[M]eals that are not required by out-of-town travel are not compensable." Tatum, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) (quotation omitted). The meals, which are described as "Meals – Overtime" and "Meals – In-house Catered," do not appear to be related to out-of-town travel, and are accordingly not reimbursable.

Thus, the Court deducts $12,493.47 ($2,757.00 plus $9,298.95 plus $437.52) from the costs award. Plaintiff is entitled to $22,839 in costs.

## IV. CONCLUSION

For the reasons explained above, Plaintiff's motion for attorneys' fees and costs is granted in part and denied in part. Insofar as Plaintiff seeks the reimbursement of attorneys' fees, it is granted to the extent of $388,418.04 ($381,622.23 for attorney work plus $6,795.81 for support staff work). It is denied with respect to the remainder, which represents the excess of requested attorney hourly fees over the 10% reduction and paralegal and e-discovery support hourly fees over the 30% reduction. Costs are granted in the total amount of $22,839, reflecting the denial of Plaintiff's application for certain costs as detailed above. This Memorandum Opinion and Order resolves docket entry nos. 32 and 47.

SO ORDERED.

Dated: New York, New York
August 24, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge